# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN M. G.,[1]<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. 2:18-cv-10557-AFM<br><br>**MEMORANDUM OPINION AND ORDER REVERSING AND REMANDING DECISION OF COMMISSIONER** |

Plaintiff, Sean M. G., filed this action seeking review of the Commissioner's final decision denying his application for disability insurance benefits. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issues. The matter is now ready for decision.

## BACKGROUND

Plaintiff applied for disability insurance benefits in April 2015, alleging that he became disabled on May 4, 2013. Plaintiff's application was denied.

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

(Administrative Record ["AR"] 91-96, 154-157.) On August 9, 2017, a hearing took place before an Administrative Law Judge ("ALJ"). Plaintiff, who was represented by counsel, and a vocational expert ("VE") both testified. (AR 32-59.)

In a decision dated November 17, 2017, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine; left rotator cuff injury; status-post right shoulder surgery in June 2012; status-post left knee surgery; and diabetes. (AR 22.) The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with the following exceptions: He needed a cane to walk; could perform postural activities no more than frequently; could reach overhead bilaterally only occasionally and may need to bend his right arm while reaching; and needed to take one to two-minute breaks every hour. (AR 24.) Relying upon the testimony of the VE, the ALJ found that Plaintiff was able to perform his past relevant work. Accordingly, the ALJ concluded that Plaintiff was not disabled. (AR 27-28.)

The Appeals Council subsequently denied Plaintiff's request for review (AR 1-6), rendering the ALJ's decision the final decision of the Commissioner.

**DISPUTED ISSUES**

1. Whether the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence or whether she was obligated to develop the record.
2. Whether the ALJ properly evaluated the credibility of Plaintiff's subjective complaints.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d

1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

Plaintiff contends that the ALJ erred in assessing his RFC by basing her RFC on a medical opinion pre-dating his August 2016 injury and on her own interpretation of raw medical data post-dating that injury. According to Plaintiff, the ALJ was required to develop the record by obtaining a medical opinion based upon Plaintiff's impairments after the August 2016 injury. (ECF No. 20 at 2-11.)

**A. Medical Evidence**

The ALJ noted that Plaintiff had a history of right shoulder impairment after a motor vehicle accident in December 2011. As a result of that injury, Plaintiff underwent right shoulder rotator cuff repair surgery in June 2012. During a follow-up in June 2013, Plaintiff complained of right shoulder and right knee pain. (AR 25, 210-211, 236-239.)

Plaintiff next sought medical treatment in March 2014, when he "presented to a new doctor [(Dr. Jasmin Javaherian)] for medications, an annual diabetes eye examination, and a complaint of left knee pain." (AR 25, citing AR 285- 327.) In August 2014, Plaintiff complained of shoulder pain. (AR 31.) After complaining of shoulder pain again in October 2014, Plaintiff obtained a referral for an x-ray. (AR 316-317.) As the ALJ noted, the record does not indicate that Plaintiff followed up.

In April 2015, Plaintiff complained of right shoulder and elbow pain. He was referred for physical therapy. (AR 307, 313.) However, it does not appear that Plaintiff underwent physical therapy. (AR 25.)

In July 2015, Michael Wallack, M.D., performed a complete internal medicine evaluation. At the time of Dr. Wallack's examination, Plaintiff complained of constant back pain since 2010, without significant radiation. Plaintiff was not using an assistive device, and no surgery had been recommended. (AR 276.) Plaintiff also complained of right and left knee pain. (AR 276.)

Dr. Wallack observed that Plaintiff was agile, was able to get on and off the exam table without any difficulty, and had a normal gait. (AR 278.) Examination of Plaintiff's back revealed no tenderness to palpation, no muscle spasm, and negative straight leg raising. (AR 279.) Plaintiff's range of motion on forward flexion and extension was slightly reduced. (AR 279.) Abduction of Plaintiff's shoulders was limited bilaterally, but adduction was normal. (AR 279.) Range of motion in Plaintiff's knees was full, with slight discomfort. Motor strength was 5/5 in all extremities. Plaintiff was able to stand on his heels and toes. (AR 280.)

Dr. Wallack diagnosed Plaintiff with low back pain and slight reduction in flexion; right and left knee pain, but with full range of motion. (AR 280). In Dr. Wallack's opinion, Plaintiff was able to stand/walk for six to eight hours in an eight-hour workday; could sit without limitation; did not need an assistive device; could lift 50 pounds occasionally and 25 pounds frequently, but some activities above the horizontal would require Plaintiff to bend at the elbow. (AR 281.)

In August 2016, more than a year after Dr. Wallack's examination, Plaintiff slipped and fell, injuring his left shoulder, back, and left knee. (AR 333, 338.) Soon after the accident, Plaintiff was treated by Behrooz Broukhim, M.D. (AR 360-364.) Dr. Broukhim's physical examination revealed stiffness, pain, and swelling in Plaintiff's knee, shoulder, and back. (AR3 38-339.) Dr. Broukhim observed Plaintiff appeared to have difficulty in getting up or moving due to his low back injury. (AR 340-341.) He diagnosed Plaintiff with contusion of the left shoulder; lumbar sacral contusion and musculoligamentous strain/sprain injury; and contusion of the left knee with post-traumatic effusion. (AR 341-342.) He recommended observation,

rest, ice, heat, Percocet, and physical therapy. If Plaintiff failed to improve, further workup would be required. (AR 342.)

A September 2016 MRI of Plaintiff's left shoulder showed a supraspinatus tendon tear and aggravation of tendinitis, bursitis, and degenerative joint disease of the left AC joint. (AR 335, 345-346.) An MRI of Plaintiff's lumbar spine from the same date showed a disc herniation at L5-S1 and disc bulges at L4-L5 and L3-L4, but no significant central canal or neural foraminal narrowing. (AR 335-336, 343-344.) Physical examination of Plaintiff's left knee indicated sprain/contusion with post-traumatic effusion. (AR 335-336.)

Dr. Broukhim performed a comprehensive orthopedic re-evaluation on September 27, 2016. On that date, Plaintiff reported that his left knee was better, but his left shoulder and low back pain persisted. Plaintiff had a "hard time getting up or moving due to low back pain." Straight leg raising was positive bilaterally. Dr. Broukhim reviewed the MRIs of Plaintiff's left shoulder and lumbar spine. He diagnosed Plaintiff with contusion and sprain of the left shoulder with supraspinatus tendon tear and aggravation of the tendinitis, bursitis and degenerative joint disease of the left AC joint-impingement syndrome; lumbar sacral contusion with musculoligamentous strain/sprain injury with multilevel disc herniation of the lumbar spine and discogenic pain; and sprain/contusion of the left knee with post-traumatic effusion. Dr. Broukhim recommended surgery for Plaintiff's left shoulder; chiropractic care, home exercises, and physical therapy for Plaintiff's back. If Plaintiff's lumbar spine did not improve, he could consider lumbar epidural nerve blocks. (AR 333-336.)

In October 2016, Plaintiff underwent an initial consultation with Vikram Singh, M.D., a pain specialist. Dr. Singh noted that Plaintiff moved with a slow and deliberate gait; his cervical and lumbar spine were tender on palpation; and range of motion was limited in Plaintiff's cervical spine and lumbar spine. Motor strength and reflexes were normal in Plaintiff's upper extremities. Plaintiff was unable to perform

heel and toe walking; his range of motion in his lumbar spine was reduced; and Plaintiff had moderate to severe tenderness to palpation. (AR 353-356.). Dr. Singh also reviewed the MRIs of Plaintiff's shoulder and lumbar spine. He assessed Plaintiff with lumbar spine sprain/strain syndrome with lumbar radiculopathy. Dr. Singh's treatment plan consisted of a series of epidural injections, nonsteroidal anti-inflammatory medication, and possibly narcotic medication and muscle relaxants. (AR 358.) According to Dr. Singh, he told Plaintiff that the disk protrusion was "quite large," and that Plaintiff also had an "annular tear." In Dr. Singh's opinion, Plaintiff had a 50% chance that epidural injections would improve his pain. He further opined that if the pain did not improve, Plaintiff "would be a candidate for possible surgical discectomy and fusion." (AR 358.) Dr. Singh provided Plaintiff with lumbar epidural injections in October and December 2016. (AR 348-349, 351-352.) Plaintiff was issued a cane in November 2016. (AR 25, citing AR 362.)

The record also includes evidence that Plaintiff complained of worsening back pain in February 2017 and underwent left shoulder arthroscopic surgery in May 2017, Although the ALJ acknowledged this evidence, she dismissed it because it was "beyond the date last insured." (AR 25, citing AR 288, 328-332.)[2]

With regard to Plaintiff's diabetes, the ALJ noted that although Plaintiff had been diagnosed with that condition for more than 10 years, it remained under good control. (AR 25, citing AR 280, 309-310.) She noted that the only evidence of diabetic complications was found in November 2015, when Plaintiff complained of numbness, tingling, and pins and needles in both feet (AR 25-26, citing AR 297.) On that date, physical examination revealed decreased sensation to light touch, pinprick, and vibration bilaterally. The ALJ noted that Plaintiff was instructed to follow up for NCV studies (AR 297-299), but the record lacked any evidence that Plaintiff did so. (AR 26.)

---

[2] Plaintiff's last date of insured was December 31, 2016. (AR 22.)

### B. The ALJ's RFC Assessment

In assessing Plaintiff's RFC, the ALJ discussed Plaintiff's allegations as well as the foregoing medical evidence. She gave "some weight" to Dr. Wallack's July 2015 opinion that Plaintiff could perform medium level work with few limitations. The ALJ found Dr. Wallack's opinion to be consistent with his findings on examination. Nevertheless, "based on the injuries sustained in the subsequent slip-and-fall accident," the ALJ "[gave Plaintiff] the greatest benefit of the doubt and [found] he was limited to a range of sedentary work as described" above. (AR 26-27.) The ALJ indicated that she did not consider the State Agency RFC assessment because it was prepared by a "Single Decision Maker (SDM) and no physician reviewed or signed [it.]" (AR 27, citing AR 81-90.)

### C. Analysis

The crux of the issue is whether the ALJ properly relied upon her own interpretation of the medical records post-dating Plaintiff's slip-and-fall injury in making an RFC determination or whether the ALJ had a duty to develop the record.

An ALJ has a "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). This duty arises when the evidence in the record is ambiguous or is "inadequate to allow for a proper evaluation." *Mayes v. Massanari*, 276 F.3d 453, 459-460 (9th Cir. 2001); *see also* 20 C.F.R. § 404.1519a (a consultative examination should be purchased when additional evidence is needed which is not in the medical record; there is a conflict, inconsistency, ambiguity or insufficiency in the evidence which must be resolved; or when there is an indication that there is a change in a claimant's condition which is likely to affect their ability to work).

As set forth above, Dr. Wallack rendered an opinion regarding Plaintiff's condition in July 2015, prior to a slip-and-fall accident. While it is not clear whether the August 2016 accident resulted in new, different impairments or aggravated prior

impairments, it is clear that Plaintiff's condition significantly changed after his August 2016 accident. For example, at the time of Dr. Wallack's examination, Plaintiff was not using an assistive device, and no surgery had been recommended. But in November 2016, Plaintiff began using a cane, and medical records indicate that surgery could be warranted. Likewise, at the time of Dr. Wallack's examination, Plaintiff was agile, having no difficulties getting on and off the exam table; straight-leg raising was negative; and his spine had no tenderness on palpation. After Plaintiff's accident, however, he was described as having a hard time getting up or moving; straight-leg raising was positive; and his spine showed moderate to severe tenderness on palpation. Furthermore, the MRI results reveal numerous abnormal findings.

Recognizing that Plaintiff's condition changed after his accident in August 2016, the ALJ discounted Dr. Wallack's pre-accident opinion that Plaintiff could perform medium exertional work. While the record contains objective evidence of Plaintiff's condition after August 2016, it is devoid of any medical opinion regarding what functional limitations, if any, resulted from the injuries Plaintiff sustained in August 2016. As a result, the ALJ's determination concerning the severity of Plaintiff's back and shoulder impairments and their resultant functional limitations was necessarily based upon her own interpretation of the clinical findings and treatment notes.

An ALJ is "not qualified to interpret raw medical data in functional terms." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *see Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (ALJ should not make his "own exploration and assessment" as to a claimant's impairments). Thus, in light of the new medical evidence, the ALJ had a duty to develop the record by, for example, retaining a medical expert or by ordering a consultative examination. *See Karen E. v. Berryhill*, 2019 WL 1405835, at *4 (C.D. Cal. Mar. 27, 2019) (ALJ erred by interpreting raw data regarding impairment and should have developed the record by either retaining

a medical expert to evaluate the records or ordering a consultative examination); *Miller v. Astrue*, 695 F. Supp. 2d 1042, 1048 (C.D. Cal. 2010) (it is improper for the ALJ to act as the medical expert); *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (ALJ is not qualified to extrapolate functional limitations from raw medical data). By relying instead upon her own lay interpretation of the objective medical evidence, the ALJ's RFC was not supported by substantial evidence. *See Sonja S.R. v. Berryhill*, 2018 WL 3460165, at *7 (C.D. Cal. July 16, 2018) (ALJ's RFC determination was not supported by substantial evidence where the plaintiff "developed several new impairments subsequent to the State Agency physicians' review and the ALJ's RFC determination was based on his own lay interpretation of that evidence"); *Rivera v. Berryhill*, 2017 WL 5054656, at *4-5 (C.D. Cal. Oct. 31, 2017) (ALJ erred by formulating an RFC based on his own interpretation of medical findings in MRI rather than on medical opinion).

The Commissioner argues that the ALJ was not required to develop the record because her "RFC finding was a reasonable and legitimate interpretation of the objective medical findings and Plaintiff's own statements, none of which was indicative of disability." (ECF No. 21 at 5.) According to the Commissioner, the medical records post-dating Plaintiff's August 2016 accident reveal no significant or permanent change in Plaintiff's impairments. (ECF No. 21 at 4.) The Commissioner's contention begs the question. Like the ALJ, the Commissioner posits his own conclusions and interpretations of the medical evidence post-dating August 2016. Yet, in assigning little weight to the opinion of Dr. Wallack, the ALJ explicitly recognized that the opinion was rendered prior to Plaintiff's accident and subsequently-obtained relevant medical evidence. Thus, even the ALJ implicitly found the later medical evidence significantly affected the nature and severity of Plaintiff's impairments. Consequently, the Commissioner's argument is unpersuasive. *See Freda G. v. Saul*, 2019 WL 2568398, at *3–5 (C.D. Cal. June 20, 2019) (rejecting similar argument).

Finally, the Court cannot confidently conclude that the ALJ's RFC assessment and non-disability decision would have been the same absent this error. *See Karen E.*, 2019 WL 1405835, at *4-5 (remanding where ALJ assed RFC without the benefit of any physician opinion regarding the limitations resulting from plaintiff's carpal tunnel syndrome, so for the ALJ to assess RFC required him to act "as his own medical expert and translate the data himself, something he was not qualified to do"); *Kohlbatz v. Berryhill*, 2018 WL 2059645, at *4–5 (C.D. Cal. Apr. 30, 2018) (remanding where ALJ erred by basing RFC on ALJ's own lay interpretation of the medical record, and such RFC is not supported by substantial evidence); *Zazueta v. Colvin*, 2014 WL 4854575, at *5 (C.D. Cal. Sept. 29, 2014) (remanding where ALJ rejected only medical opinion regarding functional limitations, then assessed plaintiff's RFC on ALJ's own lay interpretation of medical records, so the RFC assessment was not supported by substantial evidence).

Having found above that remand is warranted, the Court declines to address Plaintiff's remaining argument. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

## REMEDY

Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (citations omitted). "The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. . . . If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from

conflicts and ambiguities, and all essential factual issues have been resolved." *Dominguez*, 808 F.3d at 407 (citation and internal quotation marks omitted).

Although the Court has found error as discussed above, the record on the whole is not fully developed, and factual issues remain outstanding. The issues concerning Plaintiff's alleged disability "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *See Brown-Hunter v. Colvin*, 806 F.3d 487, 496 (9th Cir. 2015); *see also Treichler*, 775 F.3d at 1101 (remand for award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved") (citation omitted); *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (same where the record does not clearly demonstrate the claimant is disabled within the meaning of the Social Security Act).

Accordingly, the appropriate remedy is a remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).[3]

**ORDER**

IT IS THEREFORE ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this opinion.

DATED: 10/30/2019

                                                                    _____
                                                                    ALEXANDER F. MacKINNON
                                                                    UNITED STATES MAGISTRATE JUDGE

---

[3] It is not the Court's intent to limit the scope of the remand.